UNITED STATES of America,
Plaintiff-Appellee,

v.

162.20 ACRES OF LAND, MORE OR LESS, SITUATED IN CLAY COUNTY, STATE OF MISSISSIPPI, and F.E. Uithoven, et al., Defendants-Appellants.

No. 83–4447.

United States Court of Appeals,
Fifth Circuit.

June 4, 1984.

J. Arthur Smith, III, Baton Rouge, La., for defendants-appellants.

Jacques B. Gelin, David C. Shilton, U.S. Dept. of Justice, Appellate Sec., Lands

Div., Washington, D.C., for plaintiff-appellee.

Before CLARK, Chief Judge, RUBIN and POLITZ, Circuit Judges.

CLARK, Chief Judge:

This is an appeal from a district court's grant of summary judgment for the government in a land condemnation action, 567 F.Supp. 987. The court found no material factual issues in the landowners' claim that the government had not complied with the National Historic Preservation Act, 16 U.S.C. § 470 *et seq.* (NHPA), and the National Environmental Policy Act, 42 U.S.C. § 4332 (NEPA). We affirm.

### I. Procedural History

On February 14, 1978, the United States filed a complaint and declaration of taking, with a deposit of estimated just compensation for the landowners' property. The property is located near the Tombigbee River on the site of the abandoned riverfront towns of Colbert and Barton, Mississippi. On the property is an antebellum home, "Cedar Oaks," which has been owned by the Uithoven family since 1913. The U.S. Army Corps of Engineers (Corps) seeks to include the property within the Tennessee Tombigbee Waterway Project, as part of the "Barton Ferry Recreation Area" along the Columbus Lock and Dam segment of the waterway. The Barton townsite and Cedar Oaks are listed on the National Register of Historic Places as within the Tombigbee River Multi-Resource District (River District).

As a defense to the condemnation the landowners asserted that the government could condemn the National Register site only after it had complied with the provisions of the NHPA.[1] The district court granted the government's motion to strike the defense. A panel of this court affirmed, *United States v. 162.20 Acres of Land, More or Less, Situated in Clay County, Mississippi,* 639 F.2d 299 (5th Cir. 1981), but remanded for a determination of whether the Corps had come into compliance with the Act, for purposes of deciding whether to withhold possession from the government or to issue appropriate injunctive relief.

On remand, the landowners asserted that the government had not complied with either NHPA or NEPA.[2] The district court

1. Section 470f of the NHPA provides as follows: The head of any federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and the head of any Federal Department or independent agency having authority to license any undertaking shall, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register. The head of any such Federal agency shall afford the Advisory Council on Historic Preservation established under Section 470i and Section 470t of this title, a reasonable opportunity to comment with regard to such undertaking.

2. Section 102(2)(C) of NEPA provides: ... all agencies of the Federal Government shall
(C) include in every recommendation or report on proposals for legislation and other major Federal Actions significantly affecting the quality of the human enviornment, a detailed statement by the responsible official on
(i) the environmental impact of the proposed action,
(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,
(iii) alternatives to the proposed action,
(iv) the relationship, between short-term uses of man's environment and the maintenance of long-term productivity, and
(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.
Prior to making any detailed statement, the responsible Federal official shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to the environmental impact involved ...
42 U.S.C. § 4332(2)(C).

granted the government's motion for summary judgment. The landowners appeal.

## II. The NHPA Claim

■ The landowners urge us to reconsider the prior panel's holding that noncompliance with NHPA is not a valid defense to a condemnation action. The federal doctrine of the law of the case is that when an appellate court establishes a rule of law in a particular case, it will not depart therefrom on a successive appeal unless sound reasons exist to do so. *See generally* 1B J. Moore, Federal Practice, ¶ 0.404[10] at 573–74 (2d ed.1974). In this circuit, however, the law-of-the-case doctrine is supplanted by our firm rule that one panel cannot disregard the precedent set by a prior panel even though it perceives error in the precedent. *Ruiz v. Estelle*, 666 F.2d 854, 857 n. 5 (5th Cir.1982).

In this case, we find no reason to decide differently the issue whether noncompliance with NHPA is a valid defense to a condemnation. The landowners' request for reconsideration is based on the reasoning of the court in *Massachusetts v. Watt*, 716 F.2d 946 (1st Cir.1983). There the court affirmed the grant of a preliminary injunction stopping the government from auctioning oil leases before complying with NEPA's requirements. The court rejected the government's argument that the lease sale alone could not hurt the environment, and thus should have been allowed to proceed while the court made a more thorough examination of its lawfulness. The court reasoned:

> It is appropriate for the courts to recognize this type of injury in a NEPA case, for it reflects the very theory upon which NEPA is based—a theory aimed at presenting governmental decisionmakers with relevant environmental data before they commit themselves to a course of action.
>
>    \*     \*     \*     \*     \*     \*
>
> In the present case plaintiffs would suffer harm if they were denied an injunction, if the lease sale then took place, and if the court then held that a supplemental EIS was required. In that event, the

successful oil companies would have commited time and effort to planning the development of the blocks they had leased, and the Department of the Interior and the relevant state agencies would have begun to make plans based upon the leased tracts. Each of these events represents a link in a chain of bureaucratic commitment that will become progressively harder to undo the longer it continues. Once large bureaucracies are committed to a course of action, it is difficult to change that course—even if new, or more thorough, NEPA statements are prepared and the agency is told to "redecide." It is this type of harm that plaintiffs seek to avoid, and it is the presence of this type of harm that courts have said can merit an injunction in an appropriate case.

716 F.2d at 952. The landowners argue that NHPA likewise is focused on the governmental decisionmaking process, and that the prior panel erred in allowing the government to condemn land without first complying with NHPA.

■ The *Watt* decision is not persuasive in the context of this case. The prior panel held that the vesting of title in the government is a neutral act vis-a-vis the NHPA, and therefore that noncompliance with NHPA is not a defense to the condemnation itself. 639 F.2d at 304. The court further held, however, that "a district court having before it a condemnation case may require compliance with section 470f and either withhold possession by the government or take appropriate injunctive action to enforce its order." *Id.* at 305. This holding is not inconsistent with *Watt*. The transfer of title effected by the condemnation does not relieve the government of its obligations under NHPA or NEPA. Those obligations must be fulfilled before the government takes any steps toward making use of the property taken. Noncompliance can be the basis of a court order withholding possession of the land or enjoining any construction or other activity that threatens to disturb the environment. *Id.* at 304. Moreover, a court determining

whether compliance has been achieved cannot take into consideration the fact that the government has acquired the property. Not even the first link forged in "a chain of bureaucratic commitment" can be used to strengthen the agency's NHPA study of the effect of the proposed undertaking.

With this in mind, we review the district court's determination that no genuine issue of material fact existed as to corps compliance with the provisions of NHPA. The court found that the Corps had achieved compliance under 36 C.F.R. § 800.6(c)(3), which provides:

Effect of Memorandum of Agreement. Agreements duly executed in accordance with these regulations shall constitute the comments of the Council and shall evidence satisfaction of the Federal agency's responsibilities for the proposed undertaking under Section 106 of the Act, Section 2(b) of the Executive Order, and these regulations.

The Corps and the Advisory Council on Historic Preservation ratified a Memorandum of Agreement covering the River District on December 19, 1977. The landowners concede that the Corps developed a structure treatment plan pursuant to Section 2(c) of the agreement,[3] which the Advisory Council ratified on April 18, 1983. The court found that the plan fully satisfied the government's obligations under 2(c), and therefore under NHPA.

■ The landowners raise two objections on appeal to the structure treatment plan. The first is that it was developed too late: well after the government condemned the subject property. We have already declined the landowners' invitation to reconsider whether the government's failure to comply with NHPA before condemning

property is disabling. The district court found that the Corps came into compliance with NHPA before making any irretrievable commitment of resources or engaging in any construction on the recreation area. The landowners do not challenge this finding. Therefore, our concern that NHPA be honored before the government takes steps to use property prematurely taken is satisfied.

The landowners' second objection is that there are material fact issues as to whether the government complied with section 2(c) of the Memorandum of Agreement. Specifically, the landowners contend that the Corps did not document the effects of the Barton Ferry Recreation Area on the Colbert-Barton townsites, or adequately review alternatives to the use of the Cedar Oaks structure. The district court rejected this argument based on its review of the government documents and the landowners' evidence of the inadequacy of the documents. Our review of the same evidence leads us to concur with the district court that the government documents "clearly demonstrate compliance with 2(c)'s obligations to (a) develop a structure treatment plan, (b) document the project's effect on each structure involved, (c) review reasonable mitigation alternatives, (d) select a most feasible mitigation alternative, and (e) submit supporting maps and documentation." We therefore find no error in the court's grant of summary judgment for the government on the NHPA claim.

### III. The NEPA Claim

■ The landowners contend that the Corps has not complied with NEPA because it did not conduct a site-specific environmental impact study for the Barton Ferry Recreation Area.[4] The district court

---

**3.** *Architectural Resources*

   c. The Corps of Engineers, in consultation with the Alabama and Mississippi State Historic Preservation Officers, will develop a plan for the treatment of structures that meet the National Register criteria and that will be affected by the project. This plan will be submitted to the Council for comment pursuant to 36 C.F.R. Part 800 and shall document the project's effects on each property, include

a review of alternatives that would avoid or mitigate any adverse effects, and indicate those alternatives considered to be the most feasible and prudent. The plan shall be accompanied by maps, survey documentation, and the views of the Mississippi and Alabama State Historic Preservation Officer.

**4.** The government asserts that the NEPA challenge is untimely. Because we affirm the dis-

rejected this argument, reasoning that as long as the agency performs the necessary depth of analysis, the choice between a programmatic and a site-specific Environmental Impact Statement is within the agency's discretion. The court found that the Supplemental Environmental Impact Statement adequately dealt with the concerns raised by the landowners. It also found the supplemental statement, in conjunction with other documents, demonstrated in-depth attention to the unique archeological and architectural features of the Barton Ferry Recreation Area which merited individualized attention. We find no error in the district court's evaluation of this aspect of the NEPA claim.

The landowners contend that the court erred in determining that the Corps did not abuse its discretion in failing to perform a site-specific impact statement. A site-specific impact statement is not necessary, however, if the programmatic impact statement contains all the analysis required by section 102(2)(C) of NEPA. *Natural Resources Defense Council v. Administrator*, 451 F.Supp. 1245, 1259 (D.D.C.1978), *aff'd*, 606 F.2d 1261, 1271 (D.C.Cir.1979). Here, the supplemental statement provides analysis of impacts recurring along the waterway. Although it does not treat impacts to the Barton Ferry Recreation Area separately, it does address and provide mitigation alternatives to recurring adverse impacts on wildlife and fish; noise, water, and air pollution; effects on land use and forestry; erosion; and the destruction of cultural resources. In addition, the supplemental statement incorporated by reference the exhaustive studies performed on the archeological and architectural resources at the Colbert-Barton townsites, including Cedar Oaks. Therefore, the landowners' claim that the supplemental statement did not include an adequate treatment of the adverse impacts on and alternatives to the use of Cedar Oaks is meritless. We accordingly affirm the district court's

grant of summary judgment for the government on the NEPA issue as well.

AFFIRMED.