# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-20542

United States Court of Appeals
Fifth Circuit

**FILED**
March 15, 2019

Lyle W. Cayce
Clerk

THE GIL RAMIREZ GROUP, L.L.C.; GIL RAMIREZ, JR.,

      Plaintiffs - Appellees

v.

LAWRENCE MARSHALL; MARSHALL & ASSOCIATES; JOYCE MOSS CLAY; JM CLAY AND ASSOCIATES; FORT BEND MECHANICAL, LIMITED; FBM MANAGEMENT, L.L.C.; DAVID L. MEDFORD,

      Defendants - Appellants

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CV-4872

Before WIENER, SOUTHWICK, and COSTA, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:[*]

The plaintiff is a contractor who claimed a school district employee accepted bribes in exchange for contracts and thereby harmed the plaintiff's business. The plaintiff prevailed at trial. The defendants appeal the denial of their motions for judgment as a matter of law or a new trial. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20542

## FACTUAL AND PROCEDURAL BACKGROUND

This case previously reached us after a summary judgment, which led to a partial reversal and remand. Our opinion detailed the factual background. *Gil Ramirez Grp., L.L.C. v. Hous. Indep. Sch. Dist.* (*Gil Ramirez I*), 786 F.3d 400 (5th Cir. 2015). We import here a shorter statement of the case from the district court's opinion on remand:

> This case involves multiple claims for relief based on an alleged bribery scheme to procure construction contracts. In 2010, Plaintiffs Gil Ramirez Jr. and The Gil Ramirez Group, LLC ("GRG") filed this action against Houston Independent School District ("HISD" or "the District"), former trustee Lawrence Marshall and his consulting company, alleged coconspirator Joyce Moss Clay and her consulting company, and two of GRG's competitors and their respective owners.

> . . . .

> The alleged bribery scheme at the heart of this action concerns HISD's job-order contract ("JOC") program . . . GRG alleges in particular a pay-to-play scheme in which . . . vendors hired Joyce Moss Clay and her company . . . as a consultant; Ms. Clay then paid Mr. Marshall a portion of the consulting fee; and Mr. Marshall provided favorable treatment to those who hired Ms. Clay. Defendants RHJ-JOC ("RHJ") and Fort Bend Mechanical ("FBM"), two companies competing for and ultimately awarded JOC contracts, hired Ms. Clay. Plaintiff contends that Mr. Ramirez's refusal to participate in this scheme harmed GRG's business, both in the reduction in assignments under [its] 2008 JOC contract, and in GRG's nonselection as vendor for the 2010 JOC program.

> . . . .

> [After six years of litigation the district court] held a 14-day trial that included live and deposition testimony from 28 witnesses. The jury found Defendants liable for tortious interference with prospective business relations, civil conspiracy, and RICO violations, and awarded actual and exemplary damages.

2

No. 17-20542

The district court entered a final judgment providing that the Gil Ramirez Group ("GRG") would recover $676,667 in actual damages from all defendants, jointly and severally.  It further awarded GRG punitive damages as follows: $1,400,000 from Lawrence Marshall and his company Marshall and Associates ("Marshall" or the "Marshall Defendants"); $500,000 from Joyce Moss Clay and her company JM Clay and Associates (the "Clay Defendants"); and $500,000 from David Medford, Fort Bend Mechanical, Ltd., and FBM Management, L.L.C. (the "Medford Defendants").[1]

The district court denied the defendants' motions for judgment as a matter of law or for a new trial.  The defendants timely appealed.

## DISCUSSION

### I.    RICO Arguments

The defendants devoted much of their briefing to the jury's verdict on the plaintiffs' RICO claim.  The jury awarded damages to GRG on both its tortious interference and its RICO claims.  The district court then applied "Texas's one satisfaction rule, which requires the prevailing party to elect between the alternative claims for purposes of recovery." *Malvino v. Delluniversita*, 840 F.3d 223, 233 (5th Cir. 2016).  GRG elected to recover solely on the tortious interference claim.  So long as "the election of remedies theory applies in this case, the issue of whether" the unelected award "was proper is moot." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 341 (5th Cir. 2008).

Since we see no basis to disturb the jury's tortious interference award, the various RICO-specific arguments pressed by the defendants are moot.

---

[1] It also awarded $1,000,000 in punitive damages against Eva Jackson and her company RHJ-JOC, Inc.  Those defendants did not appeal.

No. 17-20542

## II.    *Motion for Judgment as a Matter of Law*

The Marshall Defendants moved for judgment as a matter of law at the close of evidence and timely renewed the motion after the verdict.  Judgment as a matter of law is proper when "there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001) (quoting *Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 830 (5th Cir. 2000)).

Our standard of review is *de novo* but "with respect to a jury verdict is especially deferential." *Id.* (quoting *Brown v. Bryon Cnty., Okla.*, 219 F.3d 450, 456 (5th Cir. 2000)). Because of the significant role of juries, a "judgment as a matter of law should not be granted unless the facts and inferences point 'so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.'" *Id.* (quoting *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1322 (5th Cir. 1994)).

The Clay Defendants timely moved to join in Marshall's motion for judgment as a matter of law and later in his renewed motion for judgment as a matter of law, or in the alternative, a new trial.  Continuing with their efforts to embrace the other party's filings, the Clay Defendants filed a Rule 28(i) letter in this court to adopt Marshall's brief "in so far as the arguments are consistent and applicable to the parties."  It is improper, though, for an appellant to "adopt by reference fact-specific challenges" to a verdict. *United States v. Morgan*, 117 F.3d 849, 853 (5th Cir. 1997).  The Clay Defendants' effort to adopt Marshall's statutory defenses or the challenges to the sufficiency of the evidence fail, but we find to be valid the adoption of Marshall's legal arguments concerning impossibility, his evidentiary objections, and his challenge to the jury instructions. *See United States v. Alix*, 86 F.3d 429, 434 n.2 (5th Cir. 1996).

4

No. 17-20542

Determining what issues the Medford Defendants properly brought to us takes a few steps.  They neither made their own motion nor did they join Marshall's motion for judgment as a matter of law at the close of evidence.  The Medford Defendants also failed to "avail themselves of Federal Rule of Civil Procedure 50(b)" after the verdict.  *Ortiz v. Jordan*, 562 U.S. 180, 189 (2011).  "Absent such a motion . . . an appellate court is 'powerless' to review the sufficiency of the evidence after trial."  *Id.*  (quoting *Unitherm Food Sys., Inc. v. Swift–Eckrich, Inc.*, 546 U.S. 394, 405 (2006)).

The Medford Defendants did move to join Marshall's Rule 50(b) motion, but it was untimely because the need to file within 28 days "after entry of judgment is jurisdictional, and may not be extended."  *U.S. Leather, Inc. v. H & W P'ship*, 60 F.3d 222, 225 (5th Cir. 1995).  Accordingly, we "are without power to review" their arguments on appeal related to the sufficiency of the evidence for the jury's verdict on proximate cause and damages.  *McLendon v. Big Lots Stores, Inc.*, 749 F.3d 373, 375 n.2 (5th Cir. 2014).

### A. Statutory Defenses

Marshall asserts statutory defenses that are available only to those acting as employees of the school district.[2]  We held in the prior appeal, though, that Marshall was not acting as an employee and was not entitled to immunity under either the Texas Tort Claims Act (TTCA) or the Texas Education Code.  *Gil Ramirez I*, 786 F.3d at 415-17.

The part of our prior decision that Marshall challenges is when we held that even though the Texas Education Code's definition of *employee* explicitly applied to school board trustees like him, the associated immunity was limited to an act "incident to or within the scope of the duties of the employee's position

---

[2] The defenses are that he is entitled to immunity under the Texas Tort Claims Act and the Texas Education Code, that GRG failed to satisfy the exhaustion requirement of the Texas Education Code, and that the Texas Education Code provides a cap on damages.

of employment and that involves the exercise of judgment or discretion on the part of the employee." *Id.* at 417 (emphasis omitted) (quoting TEX. EDU. CODE. § 22.0511). We concluded that "bribery and peddling influence are not within the scope of a trustee's duty." *Id.*

Marshall urges us to set aside our prior decision. This circuit, though, has a "firm rule that one panel cannot disregard the precedent set by a prior panel even though it perceives error in the precedent." *United States v. 162.20 Acres of Land, More or Less, Situated in Clay Cnty., Miss.*, 733 F.2d 377, 379 (5th Cir. 1984). This "rule is no less immutable when the matter determined by the prior panel is the interpretation of state law" and it is "no less binding on subsequent panels than are prior interpretations of federal law." *F.D.I.C. v. Abraham*, 137 F.3d 264, 268 (5th Cir. 1998).

We are nonetheless required to change our prior interpretation of state law when a "subsequent state court decision or statutory amendment . . . makes this Court's prior decision clearly wrong." *Broussard v. S. Pac. Transp. Co.*, 665 F.2d 1387, 1389 (5th Cir. 1982) (en banc) (parentheses omitted). The phrase "clearly wrong" means "at a minimum, a contrary ruling squarely on point is required." *Abraham*, 137 F.3d at 269.

Marshall relies on a 2017 Texas Supreme Court opinion to say this court in the 2015 appeal was clearly wrong to conclude that immunity would not apply when the school employee was involved in bribery and peddling influence. *See Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017). We will take a look. In that case, a college professor sued a colleague for defamation after being passed over for a deanship and a professorship, alleging the colleague made false statements in response to inquiries from the faculty member overseeing the job searches. *Id.* at 751. The plaintiff acknowledged that the defendant outwardly "acted within the scope of her employment" but argued that to be entitled to immunity she was required to "furnish conclusive

6

evidence she was 'serving any purpose of her employer, as opposed to furthering her own purposes only.'" *Id.* at 752.

The Texas Supreme Court rejected this argument. It held that the TTCA "calls for an objective assessment of whether the employee was doing her job when she committed an alleged tort, not her state of mind when she was doing it." *Id.* at 753. It explained there may still be a "connection between the employee's job duties and the alleged tortious conduct . . . even if the employee performs negligently or is motivated by ulterior motives or personal animus so long as the conduct itself was pursuant to her job responsibilities." *Id.*

In Marshall's view, *Laverie* stands for the proposition that "it is improper for a court to consider an employee's self-serving motivations when determining whether the employee's actions were within the scope of his employment duties." Marshall then reasons that the district court instructed the jury it could not find him liable unless it determined he had "engaged in an official act," and that after the Supreme Court's decision in *McDonnell v. United States*, 136 S. Ct. 2355 (2016), the only "official acts" presented to the jury were his votes as a trustee. Marshall concludes that even "defiling his position" by "accept[ing] bribes in exchange for advancing the interests of certain contractors" cannot be "wholly outside the legitimate scope of a trustee's duties." *Gil Ramirez I*, 786 F.3d at 417.

The district court sensibly rejected this argument. It noted that "Ms. Laverie was not on the receiving end of a bribe." This simple but significant distinction, by itself, makes it difficult for *Laverie* to constitute a "contrary ruling squarely on point." The district court also found *Laverie* distinguishable because Marshall's conduct at issue was "not exclusively his vote — one of the possible 'official actions' found by the jury — but also his other actions in the alleged pay-to-play scheme." This observation correctly grasps a distinction

Marshall's arguments obscure: the essence of bribery is not an official act itself but the *agreement* to trade it for money.

"An agreement is the paradigmatic example of a corrupt *quid pro quo* . . . and typically results from negotiations about the 'price,' *i.e.*, how much bribe money is needed to purchase a specific official action." *United States v. McGregor*, 879 F. Supp. 2d 1308, 1317 (M.D. Ala. 2012). It is this sort of conduct that was clearly beyond the scope of Marshall's employment.

We earlier held "bribery and peddling influence are not within the scope of a trustee's duty." *Gil Ramirez I*, 786 F.3d at 417. *Laverie* held that an employee's actions within the scope of her employment remained within that scope even if the employee was "motivated by ulterior motives or personal animus." *Laverie*, 517 S.W.3d at 752-53. There is no inherent tension in viewing office politics as distinct from pay-to-play corruption. All of Marshall's statutory defenses are foreclosed by our prior decision that bribery was not within the scope of his trustee duties.

### B. Qualified Immunity

Marshall also argues the jury erred in finding he was not protected by qualified immunity. He argues that the state of the law was unclear after *McDonnell*, and thus it could not have been "clearly established" which specific acts might be illegal.

The district court was unpersuaded by these arguments because GRG's "theory of the case — which the jury appeared to accept — is that Mr. Marshall granted favors (including his vote to award JOC contracts) in exchange for a bribe" and "*McDonnell* does not leave room for an official to vote in a certain way in exchange for a bribe." We agree. The Supreme Court was quite clear that the acceptance of bribes in exchange for votes or the exertion of pressure to obtain other officials' votes continues to be unprotected by the First Amendment. *McDonnell*, 136 S. Ct. at 2370-72.

### C. Legal Impossibility

Marshall argues there could not be proximate cause for the tortious interference claim as a matter of law because GRG's 2008 contract was void, and even if it was not void, because a party cannot tortiously interfere with its own contract.

Marshall contends that the GRG contract was "void because it violated the competitive bidding requirements" of the Texas Education Code. *TXU Energy Retail Co. L.L.C. v. Fort Bend Indep. Sch. Dist.*, 472 S.W.3d 462, 464 (Tex. App.—Dallas 2015, no pet.). Under Texas law, "a void contract cannot serve as the basis for a tortious interference [with an existing contract] claim." *Jetall Cos. v. Four Seasons Food Distribs.*, 474 S.W.3d 780, 784 (Tex. App.—Houston [14th Dist.] 2014, no pet.). GRG's claim, though, was for tortious interference with *prospective* business relations, which does not require the existence of a contract. *See Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013); *In re Burzynski*, 989 F.2d 733, 739 (5th Cir. 1993).

The district court found that the "evidence at trial showed" that GRG had "a reasonable chance" of obtaining additional jobs "during the 2008 contract window." This remains true regardless of whether "that contract was later found void."

Marshall also argues, for the first time on appeal, the affirmative defense that GRG's tortious interference claim was a "legal impossibility" because "a party cannot interfere with its own contract." We do not address this point because it was waived by the failure to raise it in the district court. Any "arguments not raised before the district court are waived and will not be considered on appeal unless the party can demonstrate extraordinary circumstances*." Lofton v. McNeil Consumer & Specialty Pharm.*, 672 F.3d 372, 380-81 (5th Cir. 2012) (citation omitted). This is not an extraordinary instance

in which a failure to consider a "purely legal issue . . . will result in a miscarriage of justice." *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 326 (5th Cir. 2001).

### D. Proximate Cause

Marshall asserts more generally that there was insufficient evidence his actions were the proximate cause of GRG's damages.  The district court listed examples of GRG's "affirmative evidence to support the jury's finding of proximate cause, even if the Court or another fact finder might have reached a different verdict."  It is a fair summary, fully supporting "that the facts and inferences from the evidence do not point so strongly and overwhelmingly against the verdict that reasonable persons could not disagree." *Flowers*, 247 F.3d at 237.

### III.    Evidentiary Rulings

"This court reviews evidentiary rulings for abuse of discretion." *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 430 (5th Cir. 2014). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

### A. Hearsay of Ricardo Aguirre

Marshall contends that the district court erroneously admitted hearsay when it allowed the plaintiff to testify that Ricardo Aguirre told him that Aguirre needed to bribe Marshall to continue receiving business.  The district court rejected Marshall's argument on three separate grounds: that the testimony satisfied the statement against interest exception in Federal Rule of Evidence 804(b)(3)(A), that the testimony satisfied the unavailability exception of Rule 804(a)(5)(B), and that the testimony was not hearsay because it was a statement by a party opponent under Rules 801(d)(2)(D) and (E).  The district court's reasoning is sound.  Marshall fails to meaningfully address any of it on

appeal. The district court did not abuse its discretion by allowing the testimony.

### B. Expert Testimony

Marshall also takes issue with the district court's decision to allow testimony on damages from GRG's expert witness, Ransom Cornish, because Cornish lacked experience with government procurements.[3]

Marshall's argument, though, fails to identify error because Cornish was not testifying about the procurement process but about the calculation of economic loss. He "did not need particular expertise in . . . procurement[] to help the jury understand [loss calculation] concepts and terms." *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881-82 (5th Cir. 2013).

### IV.    Jury Instructions

A trial court's determinations as to which instructions to propound to jurors are reviewed for an abuse of the court's broad discretion. *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 240 (5th Cir. 2014). Reversible error does not arise merely because of imperfections in the charge. We will uphold the instructions if the charge "in general correctly instructs the jury, and any injury resulting from the erroneous instruction is harmless." *Rogers v. Eagle Offshore Drilling Servs., Inc.*, 764 F.2d 300, 303 (5th Cir. 1985).

Some of the objections were not preserved, meaning we review for plain error. "To meet this standard, a party must show: '(1) that an error occurred; (2) that the error was plain, which means clear or obvious; (3) the plain error must affect substantial rights; and (4) not correcting the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings.'"

---

[3] Marshall's objection was preserved because he raised it at trial and in his renewed motion for judgment as a matter of law. The Medford Defendants also argue this point on appeal, though they did not object at trial.

No. 17-20542

*Taita Chem. Co. v. Westlake Styrene, LP*, 351 F.3d 663, 668 (5th Cir. 2003) (quoting *Branch–Hines v. Hebert*, 939 F.2d 1311, 1319 (5th Cir. 1991)).

### A. Proportionate Fault Instruction

Marshall objects to the failure to give a proportionate responsibility instruction on the tortious interference claim, arguing it was justified by evidence of GRG's poor performance under the 2008 contract. A proportionate responsibility instruction under Texas law requires jurors to assign a percentage of responsibility for any contribution by the plaintiff to the harm; recovery is barred if a claimant's responsibility is more than 50 percent. TEX. CIV. PRAC. & REM. CODE. §§ 33.001-017.

In its denial of the renewed Rule 50 motion, the district court held that evidence of GRG's performance issues was relevant to proximate cause but not to responsibility for the tortious interference itself. Due to "other language in the instruction," the court determined the requested "instruction on proportionate responsibility for damages related to this claim would have created unnecessary confusion."

We conclude that proportionate responsibility was adequately addressed by the district court's other instructions. The jury was instructed that should it find "that Plaintiff would have experienced the same . . . [losses] regardless of the actions of the Defendants, [it] must find against Plaintiff on this issue." The jury was required to calculate damages based only on "profits that Plaintiff lost as a natural, probable, and foreseeable consequence of the interference with the business relation."

We view jury instructions as a whole, and if they "are comprehensive, balanced, fundamentally accurate, and not likely to confuse or mislead the jury, the charge will be deemed adequate." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Cagle*, 68 F.3d 905, 909 (5th Cir. 1995) (quoting *Scheib v. Williams-McWilliams Co.*, 628 F.2d 509, 511 (5th Cir. 1980)). The additional

12

instruction requested here may well have created confusion, not provided clarity. The district court did not abuse its discretion by refusing to give the proportionate responsibility instruction.

### B. Punitive Damages Instruction

On appeal, Marshall makes several arguments about the district court's punitive damages instruction. The first is that GRG's pleadings did not adequately raise issues of malice or willful, wanton conduct. The district court reasoned that GRG's complaint "described an intentional and criminal bribery scheme" and that this "suffices to allege of malicious, willful or wanton conduct." We agree.

The following arguments about that instruction are also made: the district court should have defined the term "clear and convincing evidence"; the district court provided an incorrect definition of "malice"; and the district court provided a standard of "reckless indifference" unsupported by Texas law. Those objections, though, were not preserved because they were not made with particularity at the jury charge conference. *See Taita Chem. Co.*, 351 F.3d at 668-69. We also find no plain error, as any error in these definitions would not affect Marshall's substantial rights.

Marshall also argues that the ratio of punitive to compensatory damages violates due process. The argument, though, is premised on an imbalance after we order a remittitur or vacate the compensatory damages entirely. Since we are not taking that course, there is no due process concern.

### V. Motion for New Trial

The standard of review for a denial of a motion for a new trial is "more deferential than our review of the denial of a motion for a judgment as a matter of law." *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1049 (5th Cir. 1998). "In light of our previous holding that the district court correctly

No. 17-20542

denied . . . judgment as a matter of law," we find it was not an abuse of discretion to deny the motion for a new trial. *Id.*

AFFIRMED.