**Affirmed and Opinion filed July 25, 2017.**



In The

# Fourteenth Court of Appeals

### NO. 14-16-00615-CV

### REY GARZA, Appellant

### V.

### ROXANA REGALADO HARRISON AND JOSEPH SANTELLANA, INDIVIDUALLY AND AS RESPRESENTATIVES OF THE ESTATE OF JONATHEN ANTHONY SANTELLANA, DECEASED, Appellees

**On Appeal from the 80th District Court
Harris County, Texas
Trial Court Cause No. 2014-32961**

## O P I N I O N

This is an interlocutory appeal from the trial court's order denying appellant Rey Garza's motion to dismiss filed pursuant to Texas Civil Practice and Remedies Code section 101.106(f). The principal issue presented is whether Garza, a police officer for a city in Grimes County, was acting within the scope of his employment when he fatally shot a suspect in Harris County while attempting to arrest him.

Because Garza's actions outside of his geographic jurisdiction did not constitute the performance of a duty lawfully assigned to him by his employer, we affirm the trial court's order.

## BACKGROUND

At all times relevant to the underlying events, Garza was employed as a peace officer by the City of Navasota Police Department in Grimes County. Garza entered into an agreement with an apartment complex to serve as a "courtesy officer" in exchange for free rent. The apartment complex is located in Harris County.

As part of his agreement with the apartment complex, Garza signed the apartment complex's "Courtesy Officers' Policy and Procedures." The Courtesy Officers' Policy and Procedures state that "[i]f a law is violated, Courtesy Patrol Officers are NOT required, nor are they authorized, to pursue and apprehend the person responsible." It further states:

> How are Courtesy Patrol Officers DIFFERENT from police officers? Courtesy Patrol Officers DO NOT have:
> - The same job duties as police officers
> - The same powers as police officers, according to the law[.]

The Courtesy Officers' Policy and Procedures provide that a courtesy patrol officer should "NOT charge in" if he observes an offense, and that courtesy patrol officers should call local law enforcement regarding any offenses. The Courtesy Officers' Policy and Procedures also include an acknowledgement stating, "I understand that[,] while providing the services herein, I am acting at the company's authority in the capacity of a Patrol/Courtesy Officer and not as an active/off[-]duty Police Officer in the State of Texas." Garza signed the Courtesy Officers' Policy and Procedures and agreed to abide by these restrictions in exchange for his rent concession.

2

Garza was off-duty as a peace officer on the afternoon of November 13, 2013. Around mid-afternoon, Garza ran an errand at a bank near the apartment complex. Upon returning to the apartment complex, Garza encountered an individual he did not recognize. The individual, Jonathen Santellana, was leaving Building 19; according to Garza, "there had been a lot of drug activity" at Building 19. Garza observed that Santellana was "holding something in his hands and was looking down at whatever it was," but Garza could not identify the object.

Suspecting that Santellana had just purchased drugs, Garza went up to his apartment to retrieve his personal firearm. Coming back outside, Garza saw Santellana sitting in a parked car with a female in the passenger seat. Garza approached the car.

Glancing inside the car, Garza observed Santellana putting marijuana into a prescription bottle. Garza, who was wearing a t-shirt, gym shorts, and sandals, displayed his police ID and badge and requested that Santellana step out of the car.

Santellana allegedly ignored the request and attempted to start the car. Garza opened Santellana's car door and again stated, "Police, step out." Santellana continued ignoring Garza and trying to start the car. Garza reached into the car and attempted to remove the key from the ignition but was unsuccessful. Santellana started the car, put it in reverse, and began to back out.

Garza found himself trapped between Santellana's car on one side, his own vehicle (parked immediately next to Santellana's) on the other, and the open driver's door in front of him. When Santellana began backing up, the open driver's door scraped along Garza's vehicle and forced Garza to backpedal with Santellana's car. Allegedly fearing he would be run over, Garza drew his personal firearm and fired into Santellana's car seven times, killing Santellana.

3

Santellana's parents — appellees here — sued Garza in his individual capacity for Santellana's wrongful death. Garza filed a motion to dismiss under section 101.106(f) of the Texas Tort Claims Act contending his actions were within the scope of his employment and that his governmental employer, the City of Navasota, was the proper defendant. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.002, 101.106(f) (Vernon 2011). The trial court signed an order denying Garza's motion to dismiss on July 19, 2016. In its order denying the motion to dismiss, the trial court stated:

> The court finds that there is a question of fact for the jury as to whether Defendant, Rey Garza was acting within the authorized course and scope of a police officer or as an employee of Defendant, CH Condominiums GP, L.L.C. at the time of the occurrence at issue.

Garza timely filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(5) (Vernon Supp. 2016) (permitting interlocutory appeal from the denial of a motion for summary judgment based on an assertion of immunity by an officer or employee of the State or a political subdivision of the State); *Singleton v. Casteel*, 267 S.W.3d 547, 549-50 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (motion to dismiss filed pursuant to section 101.106 may be treated as a motion for summary judgment for purposes of appellate jurisdiction, despite defendant's use of incorrect procedural vehicle).

## ANALYSIS

Garza contends that the trial court erred in denying his motion to dismiss because (1) he was acting within the general scope of his employment as a police officer when he fatally shot Santellana; and (2) appellees' suit could have been brought against Garza's governmental employer, the City of Navasota, under the

Texas Tort Claims Act. As a result, Garza contends dismissal was the proper remedy pursuant to the election-of-remedies provision in section 101.106(f).[1]

## I. Standard of Review

A motion to dismiss filed by an employee pursuant to section 101.106(f) is a challenge to the trial court's subject-matter jurisdiction, which we review *de novo*. *Moscrip v. Kraus*, No. 04-15-00734-CV, 2016 WL 1690320, at *2 (Tex. App.—San Antonio Apr. 27, 2016, no pet.) (mem. op.); *Singleton*, 267 S.W.3d at 550. Likewise, we review matters of statutory construction under a *de novo* standard. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) (per curiam).

## II. Texas Tort Claims Act's Election-Of-Remedies Provision

Sovereign immunity and governmental immunity protect the State and its political subdivisions, respectively, from lawsuits and liability. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655, 655 n.2 (Tex. 2008). The Texas Tort Claims Act provides a limited waiver of that immunity for certain suits against governmental entities. *Id.* at 655; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon 2011). After the Texas Tort Claims Act's enactment, "plaintiffs often sought to avoid the Act's damages cap or other strictures by suing governmental employees, since claims against them were not always subject to the Act." *Garcia*, 253 S.W.3d at 656.

To prevent such circumvention and to protect governmental employees, the Texas Tort Claims Act was amended in 2003 to include an election-of-remedies provision. *Id.*; *Kraidieh v. Nudelman*, No. 01-15-01001-CV, 2016 WL 6277409, at *3 (Tex. App.—Houston [1st Dist.] Oct. 27, 2016, no pet.) (mem. op.); *see also*

---

[1] Garza's appeal is premised only on immunity available through Texas Civil Practice and Remedies Code section 101.106. He does not assert that common law official immunity applies here.

5

*generally* Tex. Civ. Prac. & Rem. Code Ann. § 101.106. The election-of-remedies provision "force[s] a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable, thereby reducing the resources that the government and its employees must use in defending redundant litigation and alternative theories of recovery." *Garcia*, 253 S.W.3d at 657. Relevant to this lawsuit, the election-of-remedies statute provides:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under [the Texas Tort Claims Act] against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). In other words, an individual defendant is entitled to dismissal upon proof that the plaintiff's suit is (1) based on conduct within the scope of the defendant's employment with a governmental unit, and (2) could have been brought against the governmental unit under the Texas Tort Claims Act.[2] *See Laverie v. Wetherbe*, 517 S.W.3d 748, 752 (Tex. 2017).

Here, the parties do not dispute that the City of Navasota is a governmental unit that employed Garza at all times relevant to this suit. Nor do the parties appear to dispute that appellees' claims could have been brought against the City of Navasota under the Texas Tort Claims Act. The only disputed issue on appeal is

---

[2] Dismissal under section 101.106(f) does not preclude a plaintiff from subsequently pursuing a claim against the governmental unit. *See Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 359 (Tex. 2013).

6

whether Garza acted within the scope of his employment when he fatally shot Santellana while attempting to arrest him.

## III.  Scope of Employment

The Texas Tort Claims Act defines the term "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority."  Tex. Civ. Prac. & Rem. Code Ann. § 101.001(5) (Vernon Supp. 2016).  Providing additional clarification to describe conduct falling within the scope of employment, the Texas Supreme Court has adopted the Restatement of Agency's negative definition:  "[A]n employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purposes of the employer." *Alexander v. Walker*, 435 S.W.3d 789, 792 (Tex. 2014) (per curiam) (quoting Restatement (Third) of Agency § 7.07(2) (2006)).

Determining whether an employee was acting within the scope of employment "calls for an objective assessment of whether the employee was doing her job when she committed an alleged tort, not her state of mind when she was doing it."  *Laverie*, 517 S.W.3d at 753.  "The scope-of-employment analysis, therefore, remains fundamentally objective:  Is there a connection between the employee's job duties and the alleged tortious conduct?  The answer may be yes even if the employee performs negligently or is motivated by ulterior motives or personal animus so long as the conduct itself was pursuant to her job responsibilities." *Id.*

## IV.  Discussion

Although he was off-duty and present in Harris County at the time of the shooting, Garza nonetheless contends that his actions in conducting an investigation and attempting to make an arrest fall within the scope of employment for the City of Navasota because they constitute "conduct within the general scope of a police officer's customary duties."

Appellees contend that Garza was not acting within the scope of employment because he was acting only as a courtesy patrol officer for the apartment complex at the time of the incident.

We conclude that the trial court correctly denied Garza's motion to dismiss, but not for the reason asserted by appellees.[3]

The key inquiry here focuses on whether Garza was performing a duty of his employment or a task lawfully assigned to him.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.001(5).  In that regard, we must distinguish between two potentially

---

[3] It is unclear whether Garza was acting as a peace officer when he attempted to arrest Santellana.  Although dressed in plain clothes, Garza allegedly displayed his police ID and badge and requested that Santellana step out of the car.  When Santellana allegedly ignored the request and attempted to start the car, Garza opened Santellana's car door and allegedly again stated, "Police, step out."  If true, such actions generally have been sufficient to demonstrate that an officer assumed the role of a peace officer.  *See, e.g., Thomas v. CNC Invs., L.L.P.*, 234 S.W.3d 111, 118 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("CNC's evidence proved that Deputy Gordon had assumed the role of a public-safety officer *prior* to shooting Deputy Thomas. . . . Deputy Gordon wore a 'raid jacket' and his badge and verbally identified himself as 'Sheriff's Department' while attempting to detain the suspect of the suspected stolen vehicle.  In criminal cases, these actions reflect that an officer is acting in his official capacity."); *Mansfield v. C.F. Bent Tree Apartment Ltd. P'ship*, 37 S.W.3d 145, 149 (Tex. App.—Austin 2001, no pet.) (officer was acting in his official capacity when he "showed his badge and identified himself as a police officer when he asked Mansfield to lay on the ground").  Appellees dispute these allegations and contend that Garza never showed a badge or otherwise identified himself as a peace officer.  We need not decide the issue because the fact that Garza may have been acting under statutory authority as a peace officer (as discussed below) is not determinative in this instance of whether Garza was carrying out duties assigned to him by the City of Navasota for purposes of dismissal from suit under section 101.106(f).

8

overlapping concepts: (1) an employee's *authority* to perform an action; and (2) his *duty* to perform an action he has been given authority to perform. The distinction is important in this case because a governmental employee's authority to perform some action under a statute is not the same as a duty imposed upon the employee to undertake that authorized action. The performance of a duty requires authority to carry out the duty, but the inverse is not necessarily true — authority to act does not necessarily imply a duty to use the granted authority.

As this court has stated several times in the criminal context, a peace officer is a peace officer only while in his jurisdiction; when the officer leaves his jurisdiction, he cannot perform the functions of his office. *See Halili v. State*, 430 S.W.3d 549, 552 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Garcia v. State*, 296 S.W.3d 180, 184 (Tex. App.—Houston [14th Dist.] 2009, no pet.). A peace officer's jurisdiction — the geographical area of his authority — is controlled by common law if not specified by statute. *Halili*, 430 S.W.3d at 552. Under the common law, a city police officer's jurisdiction extends to the city limits. *Id.*

Statutory exceptions to this general rule have "greatly expanded a city police officer's authority to make warrantless arrests outside the officer's jurisdiction." *Id.* at 552 n.4; *see also Garcia*, 296 S.W.3d at 184. For example, article 14.03(d) of the Code of Criminal Procedure provides that "[a] peace officer who is outside his jurisdiction may arrest, without warrant, a person who commits an offense within the officer's presence or view, if the offense is a felony, a violation of Chapter 42 or 49, Penal Code, or a breach of the peace." Tex. Code Crim. Proc. Ann. art. 14.03(d) (Vernon Supp. 2016). Likewise, article 14.03(g)(2) provides that "[a] peace officer [of an incorporated city] who is . . . outside of the officer's jurisdiction may arrest without a warrant a person who commits any offense within the officer's presence or view, except that an officer described in this subdivision who is outside of that

9

officer's jurisdiction may arrest a person for a violation of [the Rules of the Road in the] Transportation Code . . . only if the offense is committed in the county or counties in which the municipality employing the peace officer is located." Tex. Code Crim. Proc. Ann. art. 14.03(g)(2).

The statutes discussed above relate to a peace officer's authority to act. *See* Tex. Code Crim. Proc. Ann. art. 14.03(d), (g)(2) (both using "may arrest"); *see also generally* Tex. Code Crim. Proc. Ann. art. 14.03 (titled "Authority of peace officers"). Those statutes do not impose a duty to act. *See, e.g.*, *In re Tarrant Cty.*, 345 S.W.3d 784, 785-86 (Tex. App.—Dallas 2011, orig. proceeding) ("[T]he Code Construction Act provides that the legislature's use of the word 'may' creates discretionary authority or grants permission or a power while the word 'shall' imposes a duty . . . .") (citing Tex. Gov't Code Ann. § 311.016). When the legislature intends to impose a duty on officers to act with the authority they possess, it has used clear language to do so. *See, e.g.*, Tex. Code Crim. Proc. Ann. art. 6.06 (Vernon 2015) ("Whenever, in the presence of a peace officer, or within his view, one person is about to commit an offense against the person or property of another, including the person or property of his spouse, or injure himself, it is his duty to prevent it.").

Our determination regarding whether Garza's actions were within the scope of his employment turns upon whether he was performing a duty assigned by his governmental employer — not on whether he was acting under general statutory authority. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.001(5); *City of Laredo v. Saenz*, No. 04-05-00188-CV, 2006 WL 286006, at *3 (Tex. App.—San Antonio Feb. 8, 2006, no pet.) (mem. op.) ("Whether a police officer is acting within his scope of employment is generally tied to the officer's duty under the law."). We have found no case law construing the statutory exceptions identified in article 14.03 to expand an officer's duty to act outside his jurisdiction. To the contrary, "[i]t is the duty of

10

every peace officer to preserve the peace ***within the officer's jurisdiction***." *See* Tex. Code Crim. Proc. Ann. art. 2.13(a) (Vernon 2005) (emphasis added); *see also Blackwell v. Harris Cty.*, 909 S.W.2d 135, 139 (Tex. App.—Houston [14th Dist.] 1995, writ denied) (same). A plain reading of article 2.13(a) explicitly limits an officer's duty to preserve the peace to his jurisdiction. *See* Tex. Code Crim. Proc. Ann. art. 2.13(a).

Garza's investigation and attempted arrest of Santellana may have been actions that Garza had statutory authority to undertake. *See* Tex. Code Crim. Proc. Ann. art. 14.03(g)(2); *Garcia*, 296 S.W.3d at 184 ("The provisions of article 14.03 also apply when an officer, outside of his jurisdiction, makes an investigative detention or *Terry* stop based on reasonable suspicion."); *Leonard v. State*, 135 S.W.3d 98, 103 (Tex. App.—Texarkana 2004, pet. ref'd) ("If a police officer acting outside the officer's home jurisdiction has knowledge, that when combined with the officer's personal observations, 'cause an officer to believe that an offense is being committed in the officer's presence,' then the officer may lawfully detain or arrest that suspect.") (quoting *Thomas v. State*, 864 S.W.2d 193, 196 (Tex. App.—Texarkana 1993, pet. ref'd)).

But, as discussed above, statutory authority to act is not the same as an assigned duty to act. Regardless of whether Garza was permitted by statute to investigate and attempt to arrest Santellana, his actions did not involve "the performance of a task lawfully assigned to [Garza] by [the City of Navasota]." *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.001(5). Stated differently, Garza's attempted arrest of Santellana in Harris County was not a duty generally assigned to him by his governmental employer because the City of Navasota had no authority to assign Garza to investigate suspects and conduct warrantless arrests outside of the

11

city limits, much less outside of Grimes County.[4] *See City of Balch Springs v. Austin*, 315 S.W.3d 219, 226 (Tex. App.—Dallas 2010, no pet.) ("In determining whether a police officer is acting within the scope of his employment, it is necessary to consider whether the officer is discharging a duty generally assigned to him by his government employer.") (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994)). Because Garza was not performing a duty assigned by the City of Navasota when he attempted to arrest and shot Santellana in another county, Garza's actions were not within the general scope of his employment as a police officer for the City of Navasota.[5] *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.001(5).

Garza argues that his actions were within the scope of his employment by the City of Navasota because (1) an off-duty officer becomes an on-duty officer when he observes a crime, and (2) when an officer is performing a public duty, such as

---

[4] Section 362.002 of the Texas Local Government Code provides that a county or municipality may enter into an agreement with a neighboring contiguous county to form a mutual aid law enforcement task force to cooperate in criminal investigations and law enforcement. *See* Tex. Loc. Gov't Code Ann. § 362.002(b) (Vernon 2005). There is no evidence before us that such a task force agreement existed allowing the City of Navasota to assign Garza to investigate matters in a different county, or that the City of Navasota actually did so.

[5] The Police Chief for the Navasota Police Department testified in a deposition as follows:

Q. Okay. At the time of the shooting, was Officer Garza working on behalf of the Navasota Police Department?

A. No, he was off-duty.

\* \* \*

Q. . . . Is there a policy — was there a policy at the time that allowed Navasota police officers to conduct or arrest individuals outside of the Navasota jurisdiction?

A. That should be under Chapter 14 of the criminal code of procedure.

Q. Okay. So that's regulated by state law, is that what you're saying?

A. Yes, sir.

The Police Chief did not testify regarding any Navasota Police Department policy requiring Garza to act outside of Grimes County.

enforcement of general laws, he is acting in the course and scope of his employment as a police officer. *See Harris Cty. v. Gibbons*, 150 S.W.3d 877, 882 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Cherqui v. Westheimer St. Festival Corp.*, 116 S.W.3d 337, 344 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Garza further contends that "engaging in an arrest is conduct that is generally within an officer's scope of employment; it is not an independent course of conduct that fails to serve any purpose of the employer." *See Fink v. Anderson*, 477 S.W.3d 460, 467 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (summarizing Texas Supreme Court's holding in *Alexander*, 435 S.W.3d at 792).

We do not dispute the general propositions of law espoused in those cases, but those cases did not involve an officer's extra-jurisdictional actions. As we have noted above, an officer has a *duty* to preserve the peace within his or her jurisdiction, whether on-duty or off-duty. *See* Tex. Code Crim. Proc. Ann. art. 2.13(a). Accordingly, an officer's actions in enforcing the peace within his or her jurisdiction, including engaging in an arrest, involve the satisfaction of a duty and fall within the scope of employment. This case presents a deviation from that general rule because Garza's actions took place outside of his jurisdiction and Garza had no duty to attempt an arrest of Santellana.

Our conclusion that Garza's actions fell outside the general scope of his employment by the City of Navasota should not be misconstrued as holding that an off-duty peace officer acting outside of his or her jurisdiction never has immunity from suit under section 101.106(f). We make no such holding. Rather, we hold that determining whether the officer is immune is a context-specific inquiry that depends on the circumstances of the particular case and whether those circumstances dictate that the officer had a duty to act.

The circumstances here arose when Garza was designated as an apartment complex "courtesy officer" who was off-duty and present outside of the geographic jurisdiction of his employment as a City of Navasota police officer. He initially observed no crime — he only saw Santellana "holding something in his hands" and leaving an area that Garza associated with drug sales. At that point, Garza went to his apartment and retrieved his firearm. Garza returned to the parking lot with his firearm to investigate further, at which point he observed Santellana sitting in a car in possession of an unknown amount of marijuana. Garza then instigated the encounter that resulted in him fatally shooting Santellana. Texas law recognizes certain circumstances under which an officer outside of his or her jurisdiction has a duty to act. *See, e.g.*, Tex. Code Crim. Proc. Ann. art. 6.06 (officers are duty-bound to prevent the commission of an offense against the person or property of another). We are not aware of any statutory duty to act that would apply to the specific facts of this case, and Garza has not directed us to authority establishing such a duty. These circumstances therefore do not give rise to immunity.

Having concluded that Garza's actions were not conducted within the general scope of Garza's employment by the City of Navasota, we conclude that the trial court did not err in denying Garza's motion to dismiss under section 101.106(f). *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f).

14

**CONCLUSION**

The trial court's order denying Garza's motion to dismiss is affirmed.


/s/    William J. Boyce
          Justice


Panel consists of Justices Boyce, Jamison, and Brown.