William J. Boyce, Justice
This is an interlocutory appeal from the trial court's order denying a motion to *347 dismiss filed by appellant Jack Fryday d/b/a Fryday Consulting Services, Inc. The principal issue presented is whether Fryday was an employee of the City of Clear Lake Shores at the time he allegedly performed a faulty inspection of the rental home of appellee Linda Michaelski. Because the evidence establishes that Fryday was an employee of the City of Clear Lake Shores, we reverse the trial court's order and render judgment dismissing Michaelski's suit against Fryday.
BACKGROUND
Michaelski sued Jack Fryday d/b/a Fryday Consulting Services, Inc. after Fryday allegedly performed "faulty building inspection work" when he inspected her rental home in Clear Lake Shores. In her original petition, she alleged claims for negligence and DTPA violations. She alleged that "[o]n or about August 2014 the Defendant was hired by the City of Clear Lake Shores to inspect the Plaintiff's rental home located at 1019 North Shore, Drive, Clear Lake Shores, Texas 77565 by the City of Clear Lake Shores, Texas." Michaelski alleged that, because of Fryday's faulty inspection, she had to incur expenses to comply with higher building standard requirements, she was deprived of rental income for the lower level of her rental home, and the value of her rental home decreased.
Jack Fryday filed a motion to dismiss, contending that he is entitled to immunity from suit because Michaelski's claims against him "involve conduct within the general scope of his employment as a building official employed by the City of Clear Lake Shores. Under Texas law, therefore, tort claims, such as Plaintiff asserts here must be brought, if at all, against the City of Clear Lake Shores, Fryday's governmental employer." See Tex. Civ. Prac. & Rem. Code Ann. §§ 101.002 ; 101.106(f) (Vernon 2011).
In her response, Michaelski argued that Fryday is not entitled to immunity because he was not an employee of the City of Clear Lake Shores; instead, she asserted that Fryday was a "private contractor" and "private contractors hired by governmental entities are not entitled to sovereign immunity." She argued that, although she pleaded that the City of Clear Lake Shores "hired the Defendant," she "never said the City of Clear Lake Shores hired the Defendant as an employee."
Fryday contended in reply that (1) Michaelski failed to provide any evidence that Fryday was an independent contractor; and (2) her "own pleadings fail to substantiate how Fryday is an independent contractor of the City of Clear Lake Shores, rather than an immune governmental official." Fryday stated that he was "appointed as the City Building Official in 2009," and served for nearly seven years in that capacity. He stated that his inspection of Michaelski's home was "entirely within the scope of Fryday's position as City Building Official" and his "responsibilities included reviewing all building permit applications and advising the City whether plans or proposals complied with applicable building codes, regulations, or ordinances." Fryday asserted that he "was an officer in the paid service of a governmental unit, sued for conduct within the general scope of his employment and should be dismissed from this lawsuit under Section 101.106(f)." To support these assertions, Fryday pointed to his written declaration attached to his reply.
Michaelski filed a sur-reply to the motion to dismiss, contending that Fryday was not an employee of the City of Clear Lake Shores because "a d/b/a b [y] definition [is] not an employee as the d/b/a is not a person." Michaelski claimed that Fryday *348 was "paid by the City of Clear Lake Shores through 1099's [sic] for the years 2013, 2014 and 2015 not by W2's," and that there are "three 1099's [sic] of the Defendant specifically identifying him as a d/b/a subcontractor only, not as a person, for 2014 and 2015." Michaelski also claimed that Fryday "identifie[d] his work done for Clear Lake Shores as a part time job and not as an employee in a prior suit in the 10th Judicial District Court in Galveston." She argued that Fryday is therefore "not entitled to governmental immunity."
The trial court denied Fryday's motion to dismiss on October 25, 2016. Fryday timely filed this interlocutory appeal. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(5) (Vernon Supp. 2016) (permitting interlocutory appeal from the denial of a motion for summary judgment based on an assertion of immunity by an officer or employee of the State or a political subdivision of the State); Singleton v. Casteel , 267 S.W.3d 547, 549-50 (Tex. App.-Houston [14th Dist.] 2008, pet. denied) (motion to dismiss filed pursuant to section 101.106 may be treated as a motion for summary judgment for purposes of appellate jurisdiction, despite defendant's use of incorrect procedural vehicle).
ANALYSIS
Fryday contends that the trial court erroneously denied his motion to dismiss pursuant to the election of remedies provision in section 101.106(f) because (1) the claims asserted against him individually are based on conduct within the general scope of his governmental employment as the City's building official; and (2) suit could have been brought against the City under the Texas Tort Claims Act.
I. Standard of Review
A motion to dismiss filed by an employee of a governmental unit pursuant to section 101.106(f) is a challenge to the trial court's subject-matter jurisdiction, which we review de novo. Garza v. Harrison , No. 14-16-00615-CV, 531 S.W.3d 852, 855-56, 2017 WL 3158946, at *2 (Tex. App.-Houston [14th Dist.] July 25, 2017, pet. filed) ; Singleton , 267 S.W.3d at 550.
II. Texas Tort Claims Act Election of Remedies
Sovereign immunity and governmental immunity protect the State and its political subdivisions, respectively, from lawsuits and liability. See Mission Consol. Indep. Sch. Dist. v. Garcia , 253 S.W.3d 653, 655, 655 n.2 (Tex. 2008); Garza , 531 S.W.3d at 856-57, 2017 WL 3158946, at *3. The Texas Tort Claims Act provides a limited waiver of that immunity for certain suits against governmental entities. Garcia , 253 S.W.3d at 655 ; see also Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon 2011). After the Texas Tort Claims Act's enactment, "plaintiffs often sought to avoid the Act's damages cap or other strictures by suing governmental employees, since claims against them were not always subject to the Act." Garcia , 253 S.W.3d at 656.
To prevent such circumvention and to protect governmental employees, the Texas Tort Claims Act was amended in 2003 to include an election of remedies provision. Garcia , 253 S.W.3d at 656 ; Garza , 531 S.W.3d at 856-57, 2017 WL 3158946, at *3 ; Kraidieh v. Nudelman , No. 01-15-01001-CV, 2016 WL 6277409, at *3 (Tex. App.-Houston [1st Dist.] Oct. 27, 2016, no pet.) (mem. op.); see also generally Tex. Civ. Prac. & Rem. Code Ann. § 101.106.
The election of remedies provision "force[s] a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is *349 vicariously liable, thereby reducing the resources that the government and its employees must use in defending redundant litigation and alternative theories of recovery." Garcia , 253 S.W.3d at 657.
Relevant to this case, the statute provides as follows:
If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under [the Texas Tort Claims Act] against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.
Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). Thus, an individual defendant is entitled to dismissal upon proof that the plaintiff's suit (1) is based on conduct within the scope of the defendant's employment with a governmental unit, and (2) could have been brought against the governmental unit under the Texas Tort Claims Act. See Laverie v. Wetherbe , 517 S.W.3d 748, 752 (Tex. 2017).
Here, the parties do not dispute that the City is a governmental unit and that Michaelski's claims could have been brought against the City under the Texas Tort Claims Act. Nor do the parties appear to dispute that, if Fryday is determined to be a City employee, then his conduct was within the scope of his employment with the City to provide building inspection services. The only disputed issue on appeal is whether Fryday was a City employee at the time he inspected Michaelski's rental home.
III. Employee of a Governmental Unit
The Texas Tort Claims Act defines the term "employee" as "a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control." Tex. Civ. Prac. & Rem. Code Ann. § 101.001(2) (Vernon Supp. 2016).
According to Fryday, the evidence in this case conclusively establishes that he was an employee of the City at the time he inspected Michaelski's home. He points to the declaration he attached to his pleading in the trial court, which states as follows:
DECLARATION OF JACK FRYDAY
I, Jack Fryday declare, on June 22, 2016, under penalty of perjury as follows:
...
2. I own and operate a building inspection company called J Fryday Consulting Services. I have provided private building inspection and related services through J Fryday Consulting Services since 2007.
3. In August of 2009, the City of Clear Lake Shores contacted me regarding serving as Building Official for the City. Although the City and I discussed the possibility of entering into a contract for my company to provide service to the City, we never made a contract. Instead, I personally agreed to perform building inspection services for the City on a part[-]time basis, and the City agreed to pay me for the work assigned on a part-time basis. The City Administrator then appointed me personally as the City Building Official with the approval of City Council.
*350 4. I served as Building Official for the City of Clear Lake Shores from approximately August of 2009 through May 30, 2016. In this capacity, I was responsible for reviewing all building permit applications in the City.
5. As City Building Official, I maintained an office at City Hall and shared an assistant with the City Secretary. The work did not take my full time but, whenever called upon to do so, I performed all of the responsibilities of the office of Building Official and reported directly to the City Administrator if any issues arose. My review and interpretations were subject to review by the Board of Adjustment, and the City Council.
6. I was never retained to work for Ms. Michaelski. Any and all work I did was done to advise the City of my opinion of whether plans or proposals complied with applicable building codes, regulations, or ordinances.
7. I have never had a contract to work as an independent contractor for the City of Clear Lake Shores. Instead, I submitted timesheets for the hours I worked for the City, as the official Building Official, and I was paid at the rate of $50 per hour for each hour worked.
Fryday's declaration constitutes evidence that the City paid him between August 2009 and May 2016 for his services as a City Building Official performing building inspection services and reviewing building permit applications for the City. The City did not hire or pay his company "J Fryday Consulting Services;" nor did Fryday have a "contract to work as an independent contractor for the City." He submitted timesheets and was paid for the hours he worked. Thus, Fryday was "in the paid service of a governmental unit" in August 2014, when he inspected Michaelski's home. See index="21" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%20101.001">id.
"Under the Texas Tort Claims Act, a person is not an employee of a governmental unit if the person is an independent contractor or 'performs tasks the details of which the governmental unit does not have the legal right to control.' " Olivares v. Brown & Gay Eng'g, Inc. , 401 S.W.3d 363, 368 (Tex. App.-Houston [14th Dist.] 2013), aff'd , 461 S.W.3d 117 (Tex. 2015) (quoting Murk v. Scheele , 120 S.W.3d 865, 867 (Tex. 2003) (per curiam)). "A party can prove right to control in two ways; first, by evidence of a contractual agreement that explicitly assigns a right to control; and second, in the absence of such contractual agreement, by evidence of actual control over the manner in which the work was performed." Id. at 368-69.
The "[Texas Tort Claims] Act's definition of 'employee' does not require that a governmental unit control every detail of a person's work." Murk v. Scheele , 120 S.W.3d 865, 867 (Tex. 2003) (per curiam) (emphasis in original) (rejecting argument that physician was not a government employee even though exercise of physician's independent professional judgment was outside of governmental unit's right of control). Thus, even if the City did not have the legal right to control all of Fryday's work as a City Building Official performing building inspection services, that does not exclude him from the definition of "employee." See Tex. Bay Cherry Hill, L.P. v. City of Fort Worth , 257 S.W.3d 379, 398 (Tex. App.-Fort Worth 2008, no pet.) (concluding that a city council member was paid by the city and was a city "employee" for purposes of Tort Claims Act immunity, even if the city did not have the legal right to control all of council member's work and she was an elected official).
Fryday's affidavit states that, because the work did not require his full time, he *351 "performed all of the responsibilities of the office of Building Official" whenever he was called upon or instructed to do so, and he "reported directly to the City Administrator if any issues arose." Fryday also maintained an office at City Hall and shared an assistant with the City Secretary. Fryday further explained in his affidavit that he advised the City of his opinion regarding "whether plans or proposals complied with applicable building codes, regulations, or ordinances" but that his "review and interpretations were subject to review by the Board of Adjustment, and the City Council." Fryday's evidence establishes that he was an employee of the City as defined by the Texas Tort Claims Act.
Michaelski argues that "Exhibit A" referred to in her sur-reply shows that Fryday was a subcontractor rather than a City employee. She argues that "Exhibit A" contains her business records affidavit and copies of three 1099 tax forms for years 2013 to 2015 showing that Fryday was paid by the City "through 1099's for the years 2013, 2014 and 2015 not by W2's," and that the tax forms specifically identify him "as a d/b/a subcontractor only, not a person." Michaelski also argues that "Exhibit B," which she attached to her sur-reply and filed in the trial court, shows that Fryday was not an employee of the City. According to Michaelski, "Exhibit B" shows that Fryday "identifies his work done for Clear Lake Shores as a part time job and not as an employee in a prior suit in the 10th Judicial Court in Galveston." "Exhibit B" appears to be a one-page excerpt of an unidentified person's testimony.
Fryday contends that the evidence he presented is uncontroverted because any evidence Michaelski points to "should not be considered by [t]his cou[r]t and is wholly insufficient." In that regard, Fryday first complains that he was never served with or ever saw Michaelski's "Exhibit A" during the trial court proceedings because Michaelski did not attach "Exhibit A" to her sur-reply or file it in the trial court. Fryday argues that there is no record of "Exhibit A" being filed during the trial court proceedings; he contends "Exhibit A" is "not listed as a filing in the trial court proceeding on the Harris County District Clerk's website," and that "neither party requested this Exhibit A when the parties designated the record on appeal." Fryday therefore asserts that this court cannot consider Michaelski's "Exhibit A."
Michaelski does not join issue on Fryday's contentions that she never served him with her "Exhibit A," never attached it to her sur-reply, and never filed it during the trial court proceedings. She makes the following statement in the summary of the argument section of her brief: "The Defendant did receive the Attachment A the 1099's of the d/b/a payments made by the City of Clear Lake Shores to the d/b/a to the Plaintiff's Sur Reply electronically through the e-file system used by the district court clerk as they are a named contact for e service." This statement does not address Fryday's contention that "Exhibit A" was not attached to her sur-reply.
On February 8, 2017, Michaelski filed a letter addressed to the Harris County District Clerk stating in pertinent part as follows:
Re: The Plaintiff Lynda Michaelski v. Jack Fryday, d/b/a Fryday Consulting Services, Inc., request for clerk record documents to be sent to the 14th Court of Appeals. District Court Cause No. 2016-18523 [i]n the 125th District Court, Harris County, Texas.
Dear Court Clerk:
At this time, the Plaintiff files its exhibit A to the Plaintiff's Sur-Reply to *352 the Defendant[']s Motion to dismiss docket number 70836691; exhibit A is referred to in the Plaintiff's Sur-Reply but inadvertently not filed prior to this date.
Again, thank you in advance.
And on February 9, 2017, Michaelski filed a letter addressed to Harris County District Court Clerk Khiela Jackson, stating in pertinent part:
Re: The Plaintiff Lynda Michaelski v. Jack Fryday, d/b/a Fryday Consulting Services, Inc., request for clerk record documents to be sent to the 14th Court of Appeals. District Court Cause No. 2016-18523 [i]n the 125th District Court, Harris County, Texas.
Dear Ms. Jackson:
At this time[,] the Plaintiff requests that the following documents be supplemented in the clerk's record for the above listed appeal. Thanks in advance for your professional courtesies.
1. Clerk letter record number 73777674 dated the 8th of February, 2017; and,
2. Exhibit A record number 73777675 dated the 8th of February, 2017.
Again, thank you in advance.
Michaelski's February 8, 2017 letter confirms that she did not file "Exhibit A" in the trial court until February 8, 2017-approximately seven months after she filed the sur-reply and three months after the trial court signed its order denying dismissal. Therefore, based on Michaelski's statement, "Exhibit A" was not before the trial court when it ruled on Fryday's motion to dismiss. We do not consider evidence that was not before the trial court at the time it made its ruling in the case. See Austin Reg'l Clinic, P.A. v. Power , No. 03-11-00601-CV, 2012 WL 2476785, at *1 n.1 (Tex. App.-Austin June 28, 2012, no pet.) (mem. op.); Neely v. Comm'n for Lawyer Discipline , 302 S.W.3d 331, 347 n.16 (Tex. App.-Houston [14th Dist.] 2009, pet. denied). Accordingly, we cannot consider "Exhibit A" filed on February 8, 2017, because it was not before the trial court when it signed its order denying Fryday's motion to dismiss; we consider only Fryday's declaration and Michaelski's Exhibit B which was attached to her sur-reply as evidence in this case.
Contrary to Michaelski's assertion, Exhibit B does not constitute evidence defeating Fryday's claim to status as a City employee. Exhibit B is a copy of a one-page excerpt of what appears to be an unidentified person's testimony in an unidentified proceeding:
Q. I guess before Ike, the hurricanes we remember are Katrina and Rita. And you were working on those storms?
A. Yes, sir.
Q. And then-so, then you took a job with the City of Kemah. Had you ever worked for the City of Kemah before that time?
A. No, sir.
Q. And that was a full-time paying job?
A. No, sir.
Q. It was a part-time job?
A. Yes, sir.
Q. Was it paying?
A. Yeah, I didn't do it free.
Q. Okay. Well, you know these public elected officials like the Mayor and City Council, they don't get paid, right?
A. I understand that. I have been that, too.
Q. Right. You have been what?
A. I have been Mayor.
Q. Of what?
A. Of Shore Acres and then Seabrook.
*353 Q. Okay. And then, so, you're very familiar with the local area and local politics?
A. Yes, sir.
Q. Okay. And you knew Ben Blackidge (phn) I bet?
Michaelski contends that this excerpt shows that Fryday "identifies his work done for Clear Lake Shores as a part time job and not as an employee in a prior suit in the 10th Judicial Court in Galveston." It does not. This excerpt does not reveal (1) the identity of the testifying witness; (2) the proceeding in which the witness testified; (3) what work the witness performed; and (4) that the witness was not employed by the City of Clear Lake Shores. At most, the excerpt shows that the testifying witness at some point in time "took a job with the City of Kemah" on a part-time basis and was paid for the work performed. The excerpt does not mention Fryday or the City of Clear Lakes Shores. Thus, Exhibit B constitutes no evidence with respect to Fryday's status as a City employee when he inspected Michaelski's rental home.
The only evidence of Fryday's employment status is Fryday's declaration. We already have concluded that Fryday's declaration establishes that he was an employee of the City as defined by the Texas Tort Claims Act.
The trial court erred by denying Fryday's motion to dismiss under section 101.106(f). See Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f).
CONCLUSION
We reverse the trial court's order denying Fryday's motion to dismiss and render judgment dismissing Michaelski's suit against Fryday.
( Jamison, J., dissenting)