Opinion issued December 31, 2019



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00450-CV

————————————

## CITY OF HOUSTON, Appellant

## V.

## ELVIN D. MILLER, Appellee

On Appeal from the 281st District Court
Harris County, Texas
Trial Court Case No. 2017-24358

## MEMORANDUM OPINION

The City of Houston appeals the trial court's order denying its plea to the

jurisdiction in Elvin Miller's suit to recover damages for injuries he suffered when

he was thrown from his motorcycle after riding over a pothole.[1] In two issues, the City contends that it is immune from Miller's suit because Miller did not timely serve it with the statutorily-required notice of his claims and he did not plead or prove that the City had actual notice of his claims.

Miller filed a motion asking this Court to order the trial court to supplement the appellate record. We deny Miller's motion.

We reverse the trial court's order and render judgment dismissing Miller's suit for lack of subject-matter jurisdiction.

## Background

According to his petition, on November 9, 2015, Miller was traveling on Scott Street in Houston, Texas, when he struck a pothole and lost control of his motorcycle, causing him to be "thrown into the air before colliding violently onto the street." Emergency medical personnel arrived on the scene and drove Miller to the hospital, where he was treated for a broken leg, a shattered ankle, lacerations, avulsions, and road rash to his arms, legs, and torso. Miller's injuries required multiple surgeries and skin grafts.

On March 3, 2016, Miller sent the City a "pre-suit notice of claim" letter apprising it of his negligence claims against it, and, on April 10, 2017, he filed suit against the City, alleging that an improperly repaired, unbarricaded pothole caused

---

[1]     *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (authorizing appeal of interlocutory order denying governmental unit's plea to the jurisdiction).

2

his accident and injuries. Miller's petition alleged that the City failed to maintain the road in a reasonably safe condition, to properly inspect and repair the defects on the road that created the dangerous condition, and to adequately warn of the dangerous condition. The petition also stated that "[p]re-suit notice of the claims w[as] provided to Defendant as required by the Texas Tort Claims Act." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101 (setting forth notice requirement).

The City filed a plea to the jurisdiction and motion to dismiss Miller's petition, arguing that Miller had, in fact, failed to provide the City with timely written notice of his claims and that that failure deprived the trial court of subject-matter jurisdiction. The City attached an affidavit stating that it received Miller's notice of claim letter on March 8, 2016, which was outside the 90-day notice deadline for personal injury claims established by the City Charter. *See* CITY OF HOUSTON CHARTER, art. IX, § 11 (establishing 90-day deadline to provide notice of claim pursuant to Tort Claims Act); TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(b) (stating that governmental unit may establish notice deadline); *see also Needham Fire & Rescue Co. v. Balderas*, No. 14-16-00211-CV, 2017 WL 1416219, at *3 (Tex. App.—Houston [14th Dist.] Apr. 18, 2017, no pet.) (mem. op.) (stating that controlling date is date governmental unit receives notice, not date claimant sends notice).

In his response to the plea, Miller did not claim to have timely served the City with written notice. Instead, he argued that the City had actual notice of his claims and, therefore, he was excused from having to serve it with formal written notice. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(c) (stating that Tort Claims Act's notice requirements "do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged"). In support of his argument, Miller attached an EMS Patient Care Report from his accident. The report identified the "cause of injury" as a motorcycle accident, and stated a time and date of 3:26 p.m., November 9, 2015. It also noted that Miller stated that he was travelling at approximately 30 miles per hour when he "hit a pothole and lost control of the bike and was thrown from it." Miller also attached work orders for repairs to a water main in the area of the street where he was injured, indicating that work was being done on the road between October 28, 2015 and November 12, 2015.

Miller also argued that a local television news report about his accident, entitled "Poorly repaired pothole sends motorcyclist to the hospital," which aired several days after his accident, established that the City had actual notice of his claims. He stated that the news report was attached to his response as Exhibit B, but our review indicates that it was not made part of the appellate record and it

4

does not appear on the list of items on file in the Harris County District Clerk's electronic database for this case.

The trial court signed an order denying the City's plea to the jurisdiction and motion to dismiss, and the City appeals that order.

## Motion to Supplement Appellate Record

After the parties filed their appellate briefs, Miller filed a "Motion for Delivery of Documents," asking this Court to direct the Harris County District Clerk's Office to supplement the appellate record with the video of the news report he referenced in his response to the City's plea to the jurisdiction as Exhibit B and claims to have filed with the clerk separately by certified mail. The City opposes the motion and maintains that it was never served with the exhibit.

We begin by noting that Miller could have requested a supplemental record directly from the trial court. *See* TEX. R. APP. P. 34.5(c)(1) ("If a relevant item has been omitted from the clerk's record, the trial court, the appellate court, or any party may by letter direct the trial court clerk to prepare, certify, and file in the appellate court a supplement containing the omitted item."); *see also, e.g., Roventini v. Ocular Scis., Inc.*, 111 S.W.3d 719, 726 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("Nothing in [Rule 34.5(c)] requires that parties seek permission from any court before directing the clerk to prepare the supplemental clerk's record and file it with the court of appeals . . . [or] obtain a ruling from any

5

court before the supplemental clerk's record will be included in the appellate record.").

In the motion, Miller contends that this Court cannot adequately assess the merits of this appeal without reviewing the video. We cannot agree, as we may not consider evidence, such as the video, that was not before the trial court when it made its ruling. *See Fryday v. Michaelski*, 541 S.W.3d 345, 352 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("We do not consider evidence that was not before the trial court at the time it made its ruling in the case."); *Fox v. Alberto*, 455 S.W.3d 659, 668 n.5 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (holding that appellate court may not consider documents that were not filed in trial court–and thus are not part of reporter's record or clerk's record–because appellate court "may not consider matters outside the appellate record"); *see also In re E.W.*, No. 05–01–01463–CV, 2002 WL 1265541, at * 3 (Tex. App.—Dallas June 7, 2002, pet. denied) (not designated for publication) ("Nor does rule 34.5(c) permit the clerk's record in an appeal to be supplemented unless it is clear that the item to be considered was on file when the trial court rendered judgment.").

Here, there is no indication that the video exhibit, which does not appear in the Harris County District Clerk's electronic database for this case, was actually filed with the district court clerk or that the trial court considered it when it denied the City's plea to the jurisdiction. *See Munoz v. Gulf Oil Co.*, 693 S.W.2d 372, 373

6

(Tex. 1984) (per curiam) (declining to consider hearing transcript on review of summary judgment because record did not establish that trial court considered transcript at time it ruled on motion). Nor has Miller made any showing that the trial court's clerk's office ever received the video exhibit.[2] The onus was on Miller to ensure that exhibits he relied upon were successfully filed.[3] *See, e.g., Battarbee v. Transp. Ins. Co.*, No. 05-99-00294-CV, 2000 WL 45921, at *1 (Tex. App.—Dallas Jan. 21, 2000, pet. denied) (not designated for publication) ("[T]he rules of appellate procedure are to ensure that the record, as it existed in the trial court, is properly filed in this Court. It is the litigant's burden to ensure a proper record is made in the trial court in the first instance."). Having failed to do so, Miller cannot now complain.

We deny Miller's motion.

---

[2] Miller states in his motion that he received return receipts from the certified mailing of the video exhibit from both the trial court and the City, but he does not attach the receipts or provide any other evidence to show that the video exhibit was mailed or that the trial court or the City received it.

[3] Miller did not file a designation of additional items to be included in the appellate record. *See* TEX. R. APP. P. 34.5(b) (permitting party to designate additional items to be included in appellate record); *cf. In re K.M.L.*, 443 S.W.3d 101, 119 (Tex. 2014) (pointing out that respondent, who knew petitioner alleged lack of notice of trial setting with his motion for new trial, failed to request inclusion of return receipt of citation in clerk's record). Nor did he invoke the procedure for correcting the record if an item is lost or destroyed. *See* TEX. R. APP. P. 34.5(e) (providing means to have missing or destroyed item that was designated for inclusion in clerk's record placed into clerk's record when party can provide accurate copy).

**Plea to the Jurisdiction**

Under the common law, municipalities like the City of Houston are immune from suit and liability for money damages unless the legislature has clearly and unambiguously waived immunity. *Worsdale v. City of Killeen*, 578 S.W.3d 57, 62 (Tex. 2019). Absent a valid statutory waiver of immunity, a trial court may not assume subject-matter jurisdiction over a suit against a governmental unit. *City of Dall. v. Albert*, 354 S.W.3d 368, 373 (Tex. 2011) (quoting *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (per curiam).

### A. *The Tort Claims Act*

The Texas Tort Claims Act waives the City's governmental immunity in certain limited circumstances, including for personal injury caused by a condition or use of personal or real property. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (providing for waiver of immunity for personal injury or death caused by condition or use of tangible personal or real property). To take advantage of the Act's limited waivers of immunity, a claimant must comply with the notice requirements set forth therein. *See id.* § 101.101(a) (requiring notice to be given to governmental entity within six months of injury in order to bring claim against governmental entity).

The Act's notice provision "allows governmental entities to investigate claims while the facts are fresh, to guard against unfounded claims, to settle

claims, and to prepare for trial." *Metro. Transit Auth. of Harris Cty. v. Garza*, No. 01-18-00408-CV, 2019 WL 1523186, at *4 (Tex. App.—Houston [1st Dist.] Apr. 9, 2019, no pet.) (mem. op.) (citing *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam)). Section 101.101(a) provides that a governmental unit is "entitled to receive notice of a claim against it . . . not later than six months after the day that the incident giving rise to the claim occurred." TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a). Such formal notice, which must be in writing, must reasonably describe (1) the damage or injury claimed, (2) the time and place of the incident, and (3) the incident. *Id.*

Although the Act states that a claimant must provide written notice within six months of his injury, it also provides that a city can establish a different notice deadline in its charter. *Id.* § 101.101(b) ("A City's charter and ordinance provisions requiring notice within a charter period permitted by law are ratified and approved."). The City of Houston's charter establishes a 90-day deadline to provide it with notice of a claim for damages for personal injuries. CITY OF HOUSTON CHARTER, art. IX, § 11; *see Duncan v. City of Hous.*, No. 01-05-00079-CV, 2006 WL 181399, at *2 (Tex. App.—Houston [1st Dist.] Jan. 26, 2006, pet. denied) (mem. op.).

The written notice requirements in subsections (a) and (b) do not apply if a governmental unit has actual notice. TEX. CIV. PRAC. & REM. CODE ANN.

9

§ 101.101(c) ("The notice requirements . . . do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged."). However, knowledge that a death, injury, or property damage has occurred, standing alone, is not sufficient to put a governmental unit on actual notice as required under the Tort Claims Act. *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 776 (Tex. 2018). To have actual notice, a governmental unit must have the same knowledge it is entitled to receive under the written notice provisions of the Act. *Id.* Thus, the actual notice provision requires that a governmental unit have subjective awareness that its fault, as ultimately alleged by the claimant, produced or contributed to the claimed injuries. *Worsdale*, 578 S.W.3d at 63. The Texas Supreme Court has clarified that a governmental unit has actual notice under the Act only if it has subjective knowledge of (1) a death, injury, or property damage; (2) the governmental unit's alleged fault that produced or contributed to the death, injury, or property damage; and (3) the identity of the parties involved. *Id.*

Failure to provide required notice deprives the trial court of jurisdiction and requires the court to dismiss the case. *See* TEX. GOV'T CODE ANN. § 311.034 ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."); *Worsdale*, 578 S.W.3d at 59 (stating that notice under Tort Claims Act is "a jurisdictional

10

prerequisite to suit"). The initial burden is on the claimant to affirmatively demonstrate the trial court's subject-matter jurisdiction. *Worsdale*, 578 S.W.3d at 66 (citing *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003)).

## B.    Standard of Review

Because notice under the Tort Claims Act is a prerequisite to subject-matter jurisdiction, whether a governmental unit had notice of a claim is a question of law we review de novo. *Worsdale*, 578 S.W.3d at 66. Where, as here, the jurisdictional evidence is undisputed, actual notice can be determined as a matter of law. *See id.* (citing *Texas Dep't of Crim. Justice v. Simons*, 140 S.W.3d 338, 348 (Tex. 2004)); *Tenorio*, 543 S.W.3d at 776 ("Whether a governmental unit has actual notice is a fact question when the evidence is disputed, but it is a question of law when the evidence is undisputed."). Accordingly, we review de novo whether the City had actual notice of Miller's claims. *See Worsdale*, 578 S.W.3d at 66.

## C.    Notice

As stated above, the Act requires that either formal or actual notice precede the filing of any lawsuit against a governmental unit. TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a), (c); *Worsdale*, 578 S.W.3d at 62. The City argues that it had neither.

11

## 1.     Formal Notice

In its first issue, the City argues that its governmental immunity is not waived because Miller did not timely serve it with formal notice of his claims. The record shows that Miller's accident occurred on November 9, 2015. Because the City has established in its charter a 90-day deadline to provide notice of a claim, Miller was required to give the City notice of his claim no later than February 7, 2016. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a)–(b) (providing that claimant must give notice of incident to governmental unit within six months of incident, but governmental unit may, in its charter, provide for different notice period); CITY OF HOUSTON CHARTER, art. IX, § 11 (establishing 90-day deadline to provide notice to recover damages for personal injury). The City presented affidavit testimony showing that it received no formal written notice of Miller's claims before it received the notice of claim letter on March 8, 2018. *See Duncan*, 2006 WL 181399, at *3 (holding that claimant's letter sent outside of 90-day deadline stated in City of Houston's charter and City's affidavit stating that claimant did not provide timely notice of claim met City's summary-judgment burden to establish lack of notice under Tort Claims Act).

Miller did not argue or present evidence in his response to the City's plea to the jurisdiction that he met the Act's formal notice requirement. We conclude that Miller did not meet the Act's formal notice requirement.

We sustain the City's first issue.

## 2.    Actual Notice

In its second issue, the City argues that Miller failed to establish that it had actual notice of his claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(c) (stating that Tort Claims Act's notice requirements "do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged"); *Worsdale*, 578 S.W.3d at 66 (stating that initial burden is on claimant to affirmatively demonstrate trial court's subject-matter jurisdiction).

We agree with the City that Miller's evidence falls short under the second prong of the actual notice test, which requires that the City have "subjective awareness" of its "alleged fault producing or contributing to" the injury. *See Worsdale*, 578 S.W.3d at 59; *see also id.* at 63 ("[A]ctual notice exists only when the governmental unit has 'knowledge of (1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved.'") (quoting *Cathey*, 900 S.W.2d at 341). Neither the EMS report nor the work orders that Miller attached as evidence to his response indicate that the City bore possible

13

responsibility for causing Miller's injuries.[4] *See Worsdale*, 578 S.W.3d at 66 (considering evidence attached to response to plea to jurisdiction where claimants failed to plead facts about actual notice).

The emergency medical technician's notation that Miller stated that he lost control of his motorcycle after hitting a pothole says nothing about fault. The same is true of the work orders, which show only that, at the time of Miller's accident, a water main near the area of the road where he was injured was under repair. The work orders do not mention the pothole, Miller, or anyone having been injured. This evidence "did not even imply, let alone expressly state, that the City was at fault" for the accident. *See City of Dall. v. Carbajal*, 324 S.W.3d 537, 539 (Tex. 2010) (per curiam) (holding that police report concluding that claimant drove "into [a] gap in [the] street [that] was not properly blocked" only described "what apparently caused the accident" but did not say who had failed to erect or maintain barricades, and was therefore insufficient to put city on actual notice); *accord Tenorio*, 543 S.W.3d at 778 (holding that city did not have actual notice that it was at fault in connection with collision as required by Tort Claims Act because "nothing in the crash report, witness statements, or case report indicates, either

---

[4]     We do not consider Miller's argument concerning the news report that was not made part of the record in determining whether the City had actual notice of Miler's claims. *See Fryday v. Michaelski*, 541 S.W.3d 345, 352 (Tex. App.— Houston [14th Dist.] 2017, pet. denied) ("We do not consider evidence that was not before the trial court at the time it made its ruling in the case.").

expressly or impliedly, that the [city's police department] subjectively believed its officers acted in error . . . such that they were in some manner responsible for the injuries").

Miller argues that the City had actual notice because it "had to be aware of the defective street condition." But it is not enough that a governmental unit should have known it might have been at fault. *See Tenorio*, 543 S.W.3 at 776 ("The actual notice requirement is not met just because the governmental unit . . . should have investigated an accident as a prudent person would have" or "should have known it might have been at fault based on its investigation."). As the Texas Supreme Court recently explained, the proper inquiry "is not whether the City *should have* made the connection between injury and responsibility as alleged, but whether the City made the connection or had knowledge that the connection had been made." *Worsdale*, 578 S.W.3d at 66; *compare Carbajal*, 324 S.W.3d at 539 (holding, in suit alleging accident was caused by defective road conditions, that police report stating that claimant's vehicle drove into excavated road that lacked proper barricades did not establish actual notice, because it "[did] not say who failed to erect or maintain the barricades"), *with Worsdale*, 578 S.W.3d at 67 (holding, in suit involving allegations that defective road conditions caused traffic accident, that evidence of "wide-ranging post-accident investigation" demonstrating effort "among various City departments to track down whether the

15

City was charged with maintaining the road and remediating the hazard" established actual notice by showing City's "knowledge connecting its alleged ownership and control of the road to the road conditions identified as contributing to" accident). Thus, even if the City should have been aware of its potential liability, this did not relieve Miller of his duty to timely inform it of his claims. *See Worsdale,* 578 S.W.3d at 63–64; *Tenorio*, 543 S.W.3d at 778. To hold otherwise "would 'eviscerate' the purpose of requiring prompt reporting of claims, which 'enable[s] governmental units to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial.'" *Worsdale*, 578 S.W.3d at 63 (quoting *Cathey*, 900 S.W.2d at 341); *see also id.* at 64 ("If a governmental unit is not subjectively aware of its fault [as ultimately alleged], it does not have the same incentive to gather information that the statute is designed to provide, even when it would not be unreasonable to believe that the governmental unit was at fault.") (quoting *Simons*, 140 S.W.3d at 348).

Accordingly, we hold that Miller has not demonstrated that the City was subjectively aware of its fault in producing or causing his injuries such that it had actual notice of his claims prior to the jurisdictional deadline for giving notice of his claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(c); *Worsdale*, 578 S.W.3d at 63. Therefore, the trial court lacked subject-matter jurisdiction over this suit. *See* TEX. GOV'T CODE ANN. § 311.034 ("Statutory prerequisites to a suit,

16

including the provision of notice, are jurisdictional requirements in all suits against a governmental entity.").

We sustain the City's second issue.

## Conclusion

We deny Miller's Motion for Delivery of Documents, and we reverse the trial court's denial of the City's plea to the jurisdiction and render judgment granting the plea and dismissing Miller's claims with prejudice. *See Harris Cty. v. Sykes*, 136 S.W.3d 635, 639–40 (Tex. 2004) (holding that after governmental entity files plea to jurisdiction and plaintiff fails, after reasonable opportunity, to cure defective pleadings, case should be dismissed with prejudice "because a plaintiff should not be permitted to relitigate jurisdiction once that issue has been finally determined").

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Goodman, and Countiss.